## BURTON v. COLLEY et al.

No. 14841—Opinion Filed Sept. 29, 1925.

Rehearing Denied Dec. 1, 1925.

(Syllabus.)

**1. Guardian and Ward—Appointment of Guardian in Indian Territory—Jurisdiction.**

The United States Court for the Southern District of the Indian Territory had authority to appoint a guardian or curator of the estate of a minor located in that district, although the domicile of the minor was not within such district.

**2. Same—Effect of Statehood on Pending Guardianship.**

When a guardian or curator of the estate of a minor had been duly appointed by the United States Court for the Southern District of the Indian Territory at Marietta, and such guardianship proceeding was pending at the time of the admission of the state into the Union, such proceeding was by section 19 of the Enabling Act (Act of Congress of June 16, 1906, 34 Stat. 277) and section 23 of the Schedule of the Constitution, transferred to the county court of Love county. The jurisdiction thus conferred upon such court was co-extensive with the state, and so long as such proceeding was pending therein, the jurisdiction of the county court of every other county to appoint a guardian for such minor was excluded.

**3. Same—Sale of Ward's Real Estate — County Court Jurisdiction—Collateral Attack.**

Where a county court of one county had acquired jurisdiction of the guardianship of a minor, as the successor of the United States Court for the Southern District of the Indian Territory, and subsequently the county court of another county, the domicile of the minor, made an order appointing another guardian for said minor and ordered his real estate sold, and said real estate was sold to a purchaser in good faith, who relied upon the record of such court, such sale cannot be collaterally attacked on the ground of the exclusive jurisdiction of the first court, when nothing appears on the face of the record of the second court showing that the court acted without jurisdiction

Error from District Court, Love County; Asa E. Walden, Judge.

Action by Allie Daney Burton against Winnie Colley, executrix, and other. Judgment for defendants, and plaintiff brings error. Affirmed.

Adams & Orr, for plaintiff in error.

Moore & West, for defendants in error.

NICHOLSON, C. J. This is an action in ejectment, commenced in the district court of Love county by plaintiff in error, as plaintiff below, against the defendants in error, as defendants below, to recover the possession of certain lands situated in Love county, of which the plaintiff claimed to be the owner by inheritance from her deceased mother and sister.

The defendants answered, pleading title in themselves by virtue of a guardian's sale, duly conducted in the county court of LeFlore county, and attached to their answer, as exhibits, copies of the entire probate proceedings had in said court, including the deed of Solomon Daney, as guardian of the plaintiff, to one W. B. Dennis, and also pleaded mesne conveyances showing the title to said lands to be vested in them, and by way of cross-petition prayed that their title be quieted. The plaintiff replied, averring that the purported conveyances set out in said answer were void for the reason that the county court of LeFlore county had no jurisdiction of the estate of the plaintiff, and that Solomon Daney was never properly appointed, or the legal guardian of her estate.

Upon the issues thus framed, a trial was had, which resulted in a judgment in favor of the defendants in accordance with the prayer of their answer and cross-petition, from which judgment the plaintiff has appealed.

It appears from the record that one J. J. Eaves was, on the 8th day of November, 1905, duly appointed guardian for the plaintiff by the United States Court for the Southern District of the Indian Territory, and that said guardianship proceeding was pending in said court at Marietta upon the admission of the state into the Union, and was by order of the district court of Love county duly transferred to the county court of said county, and, while this guardianship was still pending, the county court of LeFlore county, on August 10, 1908, appointed the plaintiff's father, Solomon Daney, her guardian, the plaintiff residing at that time in LeFlore county. Solomon Daney, acting as her guardian, filed in the county court of LeFlore county his petition for authority to sell the lands here involved,

which sale was ordered, was made and con-. firmed and guardian's deed executed and delivered. The plaintiff, after reaching her majority, seeks to recover the lands thus sold, contending that the county court of LeFlore county had no jurisdiction to appoint a guardian for her in 1908, because J. J. Eaves was her legal guardian at that time; that such guardianship was still in existence and pending in the county court of Love county, and that the county court of Love county having jurisdiction over her guardianship, the jurisdiction of every other county court in the state to appoint a guardian for her was excluded.

This appeal presents for determination the following questions: (1) Did the jurisdiction acquired by the county court of Love county, as the successor to the United States Court for the Southern District of the Indian Territory, exclude the jurisdiction of the county court of LeFlore county, the county in which the plaintiff was then domiciled, to appoint a guardian for her? (2) The records of the county court of LeFlore county showing the appointment of Solomon Daney, in 1908, to be, in all respects, regular, and all proceedings being apparently valid, can the plaintiff recover the lands sold by her LeFlore county guardian, on the order of the county court of that county, to a bona fide purchaser?

In MaHarry v. Eatman, 29 Okla. 46, 116 Pac. 935, this court held that the United States Court for the Southern District of the Indian Territory had authority to appoint a guardian or curator of an estate of a minor, located in that district, although the domicile of the minor was in the Central District, and a guardian so appointed, when qualified, had authority to execute a valid lease on the minor's land. See Eaves v. Mullen, 25 Okla. 679, 107 Pac. 443.

By the provisions of section 19 of the Enabling Act, and sections 1 and 23 of the Schedule of the Constitution, the Eaves guardianship survived the admission of the state into the Union, and passed into the county court of Love county, as the successor of the United States Court for the Southern District of the Indian Territory; Eaves v. Mullen, supra; Burdett v. Burdett, 26 Okla. 416, 109 Pac. 922; MaHarry v. Eatman, supra; Scott v. McGirth, 41 Okla. 520, 139 Pac. 519; Crosbie v. Brewer, 68 Okla. 16, 173 Pac. 441; DeWalt v. Cline, 35 Okla. 197, 128 Pac. 121. Therefore, the county court of Love county had jurisdiction of the guardianship of the estate of the plaintiff, and so long as this guardianship was pending, the jurisdiction of every other

county court in the state to appoint a guardian for the plaintiff was excluded. DeWalt v. Cline, supra; Crosbie v. Brewer, supra; Baird v. England, 85 Okla. 276, 205 Pac. 1098; State ex rel. Monahawee v. Hazelwood, 81 Okla. 69, 196 Pac. 937; Parmenter v. Rowe, 87 Okla. 158, 200 Pac. 683.

The county court acquiring jurisdiction of an Indian Territory guardianship, as successor to the United States Court in the Indian Territory, exercises a jurisdiction clearly defined by the aforesaid constitutional provisions, and the Legislature recognized this jurisdiction, and beginning with the first session after statehood, enacted laws providing for the transfer of probate proceeding from one county court to another. (Sess. Laws 1907-S, pp. 205-212; Sess. Laws 1910, p. 37; secs. 6196-98, Rev. Laws 1910.)

If upon the creation of counties in that part of the state formerly comprising the Indian Territory, the domicile of the ward was in a county other than that to which his guardianship proceedings passed by virtue of the aforesaid constitutional provisions, the proper procedure was to transfer such proceeding to the county of his domicile, as provided by Sess. Laws 1907-S, supra, or by appropriate action of the court to which such proceeding passed, terminate that guardianship before jurisdiction of another court is sought. To permit a minor, by merely removing his domicile from one county to another, to thereby oust the court in which the guardianship was pending of jurisdiction and thereby vest jurisdiction in another county court to appoint a guardian, or to permit the parties to ignore entirely the jurisdiction acquired by one court and vest jurisdiction in another court, would introduce into the administration of the estates of minors and incompetents in this state an intolerable condition of confusion with all the woes incident to two courts of concurrent jurisdiction undertaking to administer the estate at the same time. Such a condition would be intolerable. So long as the guardianship is pending in one county court, no other county court is at liberty to interfere with its jurisdiction. As was said by Justice Cooley in Maclean v. Speed, 52 Mich. 257:

"The principle is essential to a proper and orderly administration of the laws; and, while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such consideration exclusively, but is enforced to prevent unseemly, expensive and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may come

from the other also, and what is begun may be reciprocated indefinitely."

That the county court of Love county, having first acquired jurisdiction over the guardianship of the estate of the plaintiff, possessed and retained jurisdiction to the exclusion of the county court of all other counties in the state, is not only supported by our own adjudicated cases, but by text-writers and decisions of other courts. Woerner on Guardianship, p. 112; Soules v. Robinson, 158 Ind. 97, 92 A. S. R. 301, 62 N. E. 999; Wackerle v. People, 168 Ill. 250, 48 N. E. 123; Dorman v. Ogbourne, 16 Ala. 759; Moses v. Faber, 81 Ala. 445, 1 South. 587; In Re Guardianship of Danneker, minor, 8 Pac. 514 (Cal.); Estridge v. Estridge (Ky.) 76 S. W. 1101; In re Brady et al. (Idaho) 79 Pac. 75. Hence, the county court of LeFlore county was without jurisdiction to appoint a guardian for the plaintiff, and under the authority of Parmenter v. Rowe, supra, Baird v. England, supra, and State ex rel. Monahawee v. Hazelwood, supra, this court, upon application of Eaves, as the legal guardian, would have issued its writ of prohibition against the county court of LeFlore county, prohibiting that court from appointing a guardian for the plaintiff.

But a legal guardian may not be advised of the filing of the petition for the appointment of a guardian in another county, and, therefore, have no opportunity to seek such writ of prohibition, until such court has acted and made the appointment. Eaves, as the legal guardian of the plaintiff, had a right to appear in the LeFlore county court and move the dismissal of the petition for the appointment of a guardian, or file his petition for the revocation of such appointment, if made, and in case of an adverse decision, appeal therefrom, but so far as the record shows, Eaves, as legal guardian, made no application to the county court of LeFlore county to dismiss the petition for the appointment of a guardian, or to revoke its appointment and vacate all proceedings had prior to the sale of the lands involved. Indeed, it does not appear that he had any notice or knowledge of such proceeding. So we are confronted with this situation: Although the county court of LeFlore county had no jurisdiction to appoint a guardian for the plaintiff, and would have been compelled, on the application of Eaves, the legal guardian, to revoke the appointment and vacate all proceedings, can the plaintiff be heard to challenge the validity of the sale made by the LeFlore county guardian, under the orders of the LeFlore

county court, there being nothing on the face of the record of that court showing or indicating that the county court of Love county was exercising jurisdiction over the estate of the plaintiff, or calling in question its own jurisdiction?

While the doctrine of estoppel does not apply to a minor, the validity of the LeFlore county and Love county guardianships for this same plaintiff has been considered by the Supreme Court of the United States in the case of United States v. Dunn et al., decided April 13, 1925, 268 U. S. 121, 45 S. Ct. 451. In that case, the United States commenced suit in the United States Court for the Eastern District of Oklahoma against Dunn and others, to cancel an oil and gas lease executed by one Thomas (successor of Solomon Daney), purporting to act as guardian for the plaintiff, Allie Daney, under an appointment made by the county court of LeFlore county, in July, 1911, although Eaves had been appointed guardian, or curator, by the United States Court for the Southern District of the Indian Territory in 1905, the Love county court succeeding to the Eaves guardianship jurisdiction, alleging that the defendants obtained such oil and gas lease from Thomas, the LeFlore county guardian, by fraud.

The defendants contended that the LeFlore county guardian was a fiction; that the LeFlore county court had no jurisdiction to appoint a guardian for the plaintiff because jurisdiction had already been lodged in the county court of Love county, and that any fraud practiced on Thomas was not a fraud on the plaintiff, Allie Daney, and in no manner injured her, because the lease was also executed by Eaves, her legal guardian, and there was no contention or evidence of fraud practiced on Eaves; that Thomas, acting as the LeFlore county guardian, and Eaves, as the Love county guardian, both joined in the lease, and as there was no contention that Eaves' execution of the lease was obtained by fraud, that any fraud practiced on the LeFlore county guardian in no way injured the minor, and, therefore, gave rise to no cause of action; but the court said that it was "not necessary to consider the question whether Eaves, the curator, or Thomas, the guardian, properly represented the minor, or whether one of them possessed, exclusively, the power to dispose of the property of the minor, or to determine the precise legal effect of the addition of Eaves' signature to the 'lease", and that inasmuch as "Thomas, under whom Dunn and Gillan claimed, assumed to act as guardian in the disposition of the ward's

property * * * they (Dunn and Gillan) cannot deny the legal capacity in which their lessor purported to act in executing the lease, under which they claim". The lease having passed into the hands of bona fide purchasers, the court held that Dunn and Gillan, lessees, were bound to account for any profits they made out of the lease.

Now, if the appointment of the guardian by the LeFlore county court, although void for want of jurisdiction, was sufficient color of title to the office of guardian to render those who dealt with such guardian accountable to the United States, or the plaintiff, for profits made under a lease executed by him, that same color of title to the office of guardian ought to be sufficient to protect a bona fide purchaser of the land of the ward sold by the LeFlore county guardian. In other words, if the ward, or the United States acting for her, can rely upon the acts of the guardian appointed by the county court of LeFlore county, as a basis for a suit to recover on a contract made by him, without regard to whether or not the court had jurisdiction to appoint a guardian, persons dealing with a guardian appointed by said court ought to have a reciprocal right to rely upon that guardian's contracts.

Although it is not necessary to rely upon or refer to the proposition that mutuality or reciprocity is an essential element of estoppel, it is not out of place to advert to the rule that estoppel must be mutual, and bind only parties and privies. One who is not bound by an estoppel cannot take advantage of it. Ray v. Gardner, 82 N. C. 146. Hence, as an infant cannot be bound by estoppel en pais, so he cannot claim the benefit of such an estoppel against an adult. Montgomery v. Gordon, 51 Ala. 377.

The plaintiff being enrolled as a full-blood Choctaw Indian, the United States had full power to represent her. Tiger v. Western Investment Co., 221 U. S. 286, 55 L. Ed. 739; Heckman v. United States, 224 U. S. 413, 56 L. Ed. 820; Goat et al. v. United States, 224 U. S. 458, 56 L. Ed. 841; Privett et al. v. United States et al., 256 U. S. 201, 65 L. Ed. 889; United States v. Bowling et al., 256 U. S. 484, 65 L. Ed. 1054; Bowling v. United States, 233 U. S. 528, 58 L. Ed. 1080; Brader v. James, 246 U. S. 88, 62 L. Ed. 591.

As the representative of the plaintiff, the United States had the power to maintain the suit against the alleged fraudulent lessees from the LeFlore county guardian, and,

as was said in United States v. Heckman, supra:

"There can be no more complete representation than that on the part of the United States, in acting on behalf of these dependents, whom Congress, with respect to their restricted lands, has not yet released from tutelage."

The plaintiff is in the attitude of relying upon the LeFlore county guardianship when it is to her advantage to do so, and of attempting to repudiate that guardianship when that course will prove of benefit to her.

Although the county court of LeFlore county had no jurisdiction to appoint a guardian for the plaintiff, it did have general jurisdiction to appoint guardians for minors, and its want of jurisdiction to appoint a guardian for the plaintiff was due to the fact that another court had already acquired jurisdiction and thereby withdrawn from the LeFlore county court a jurisdiction it otherwise possessed. The invalidity of the LeFlore county guardianship was not on account of the lack of jurisdiction to appoint guardians for infants, but on account of the lack of jurisdiction to appoint a guardian for this particular infant, the plaintiff.

The want of jurisdiction did not appear on the face of the record, but, to the contrary, the record on its face disclosed the existence of all the jurisdictional facts. In Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681, this court held that:

"A judgment is void on its face when its invalidity is affirmatively disclosed by an inspection of the judgment roll, but it is not void in the legal sense for the want of jurisdiction, unless its invalidity appears on the face of the record. Edwards v. Smith, 42 Okla. 544, 142 Pac. 302, followed."

This, being an action in ejectment, is clearly a collateral attack on the validity of the LeFlore county guardianship. This court in Pettis v. Johnston, supra, held that extrinsic evidence is competent to show the invalidity of a judgment for the want of service of process, but that a bona fide purchaser of property, sold under the authority of a judgment, not void on its face, although rendered without service of process, will be protected.

County courts are courts of general jurisdiction in all probate matters, and their orders and judgments are accorded the same favorable presumption and the same immunity from collateral attack as is accorded

the judgments of those courts of general jurisdiction.

In Cox v. Boyce, 152 Mo. 576, 75 A. S. R. 483, the Supreme Court of Missouri held:

"If the probate court of the county in which a minor resides takes jurisdiction of his estate and appoints a guardian, and, after such minor's removal to another county, the probate court thereof takes jurisdiction of the minor and his estate, and orders his real property sold, such sale cannot be collaterally attacked on the ground of the exclusive jurisdiction of the first court, when nothing appears on the face of the record of the second court showing that the minor was a nonresident of that county or that the court acted without jurisdiction."

And in Thorps' Estate, 41 Pa. Co. Ct. 513, it was held, that where the appointment of a second guardian for the same ward had been inadvertently made by the orphan's court, without any fraud on the part of those concerned therein, and the second appointee had, in good faith, sold land of the minor under the direction of the orphan's court, and the purchaser thereof had, in good faith, paid the purchase money and entered · upon and improved the land, the orphan's court would not revoke the second appointment or set aside the confirmation of the sale of the land.

The invalidity of the LeFlore county guardianship not appearing on the face of the record, and the defendants having purchased the land in good faith, relying upon that record, which shows on its face that the land was sold under the sanction of a court of competent jurisdiction of such matters, their title will not be disturbed.

The judgment is affirmed.

BRANSON, V. C. J., and HARRISON, MASON, PHELPS, LESTER, HUNT, and RILEY, JJ., concur. CLARK, J., not participating.

Note.—See under (1) 28 C. J. p. 1069, § 29 (Anno). (2) 15 C. J. p. 1136, § 583; 25 C. J. p. 985, § 363. (3) 28 C. J. pp. 1095, § 108, 1200, § 350; 34 C. J. p. 530, § 834.